UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 07-00023-001 |
| v. | : | |
| | : | The Hon. Royce C. Lamberth |
| ADAM LONG, | : | |
| | : | Sentencing:  May 22, 2007 |
| Defendant. | : | |

DEFENDANT'S MOTION WITH REGARD TO
18 U.S.C. § 3553(a) SENTENCING FACTORS AND
MEMORANDUM IN AID OF SENTENCING

The defendant, Adam Long, through undersigned counsel, respectfully submits to the Court his position regarding the sentencing factors espoused in 18 U.S.C. § 3553(a).  The Supreme Court's decision in *United States v. Booker,* 125 S. Ct. 738 (2005) and its progeny require district courts to consider all the factors contained in § 3553(a) when calculating a criminal defendant's ultimate sentence.  This motion presents Mr. Long's position with regard to those factors contained in § 3553(a).  In short, in light of Mr. Long's lack of criminal history, his history of employment, his mental and emotional health, his early plea of guilty, his remorse, and the fact that he will have to register as a sex offender for at least 15 years and will be deported after service of his sentence, we respectfully request the Court to sentence him to the lowest sentence sufficient to meet the goals of § 3553(a).  See *United States v. Ferguson,* 456 F.3rd 660, 665 (6th Cir. 2006).

INTRODUCTION

Adam Long stands before the Court for sentencing, having entered a plea of guilty to one count of Travel With Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. §

2423(b).  He brings with him an immeasurable amount of regret, remorse, sorrow, humiliation and despair for his conduct in this case.  To those who know Mr. Long, it is unconceivable that he would stand accused of a crime of this nature.  Indeed, when the Court considers his upbringing, otherwise impressive background and actions in this case, it is quite clear that Mr. Long is far from the typical criminal defendant.

We respectfully submit that Mr. Long's conduct in this case is inconsistent and inapposite to the type of person that he truly is.  Nevertheless, Mr. Long's actions in this case were wrong and unjustifiable.  In pleading guilty, Mr. Long has taken full responsibility for his actions and offers his sincere apology to the Court, his family, friends, and the community.

<u>PERSONAL BACKGROUND OF MR.LONG</u>

I.  MR. LONG'S UPBRINGING

Adam Long was born on April 7, 1980, in England, the United Kingdom to his then 26 year old father and 38 year old mother.  Due to life threatening problems as an infant, Adam's brain development was impaired from a very early age.  Consequently he was sent to a boarding school, which offered special assistance to learning disabled children, where he remained from age 9 to 16.

By age 11, Adam's parents had divorced and his father had moved to the United States. When Adam finished school, at age 16, he began living on his own.  From age 16 to age 20 Adam lived by himself in the United Kingdom.  By this point in time, Adam's mother was residing in Malaysia most of the year.  Adam had no friends, and no family, as his father had moved to the United States in 1991.

In 2000, at age 20, Adam decided to move to the United States, where he could be close to his father, who had remarried and had another child.  Adam's father, Nigel Long, did the best

he could to help his son find employment and begin a new life in the United States. Unfortunately, with this arrest that life and the lives of many others has been shattered. Adam's dad has attempted to assist his son through this legal process, while attempting to maintain a very busy travel schedule related to his work and juggling the feelings of his present wife and their 11 year old son. Adam's mom and half-sister, live so far away that they have not even been able to visit with Adam and are left wondering what his fate will be in a criminal justice system which they know little, if anything, about.

## II.  MR. LONG'S EDUCATIONAL BACKGROUND AND WORK HISTORY

As we indicated earlier, Adam attended a boarding school from age 9 to age 16. This boarding school, Bredon, is a boarding school that, while attending to average and above average students, specializes in children with learning disabilities. At age 16 Adam "graduated" from Bredon with a vocational certificate.

After obtaining his certificate from Bredon, Adam supported himself for four years in the United Kingdom working at various part-time positions in restaurants, while, at the same time attempting to learn a catering trade. After moving to the United States, with the help of his father, Adam was able to obtain employment at various facilities. While none of his employment lasted for a lengthy period of time, he was almost always employed and lived such a modest lifestyle that his low paying jobs provided sufficient support. As the Court can see from the pre-sentence report, the fact that Adam was not able to hold any job for a lengthy period of time was not because of his lack of desire but because of his learning disorders, which we will address shortly.

Since his incarceration, Adam has attempted to better himself educationally. He is in the process of obtaining a GED, and we have obtained for the Court's review, an academic/vocational progress report, which we have attached as Exhibit 1.

## III.  MR LONG'S MENTAL AND EMOTIONAL HEALTH

Adam has been diagnosed with multiple mental disorders including attention deficient hyperactivity disorder and clinical depression. The first psychological evaluation was conducted when Adam was 13 years of age, after a referral by the Headmaster from the Bredon School. This report suggested that Adam's learning difficulties were associated with a weak short term auditory memory and poor visual motor coordination. Of note, the psychiatrist who conducted the testing discerned that (1) there was a discrepancy from Adam's chronological age to his learning abilities of approximately five years, (2)  Adam had a low self image of himself in terms of both mental and social functioning, and (3)  he was aware of the problems posed by his learning disorder; and according to Dr. D. J. Brown, the author of the report, Adam clearly wanted (and in Dr. Brown's opinion, deserved) help.

A neuropsychological evaluation was conducted in 2002, in which it was observed that, aside from the problems Adam had as an infant, he had suffered several sports related head injuries, two of which resulted in loss of consciousness. Dr. Edythe Wiggs, the neuropsychologist who authored the 2002 report, opined Adam's full scale IQ to be 79, in the borderline to low average range of intellectual ability. She observed that he needed direction repeated even within a sub-test as he was apt to begin to do something different from the instructions. As with the earlier testing, she also endorsed multiple symptoms of attention deficient hyperactivity disorder, inattentive type. (Both reports have been provided to the probation office and were mentioned in the presentence report.)

If the mental disorders were not enough, Adam has also had to deal with the emotional problems brought on by a lack of a stable family structure as well as his inability to socialize with his peers. Adam has always been overweight, never in shape and has suffered from very low self esteem. He has hardly ever dated, not being the type found attractive by members of the opposite sex. He had very few friends of the same sex, never being able to excel in sports or even carry on social, age appropriate banter with "the guys." Since his mother had moved to Malaysia and his father to the United States, Adam was left with no family and no friends, having to fend for himself for the last four years that he lived in the United Kingdom.

Fortunately, according to Adam's mother, she will return to the United Kingdom to assist Adam, who will be deported after his period of incarceration. She and her new husband will do their utmost to support him in creating a productive new life. She believes it will be a more protective society for him in Great Britain, because it is possible for young adults with difficulties similar to Adam to obtain assistance with housing and finding employment suitable to their capabilities. There also would be a number of support groups for which Adam would be eligible for membership. Adam's father, while he intends to remain in the United States, would take whatever steps are necessary by traveling to the UK, to ensure that Adam is re-integrated into society in Great Britain as well.

<u>ARGUMENT</u>

In determining Mr. Long's sentence, this court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the need for the sentence imposed to (1) "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (2) "afford adequate deterrence to criminal conduct" and (3) "to protect the public from further crimes of the defendant." *See* 18

U.S.C. § 3553(a)(1), (a)(2)(A)-(a)(2)(C).  In support of his argument with regard to the relevant

considerations, Mr. Long offers the following.

### A.  NATURE AND CIRCUMSTANCES OF THE OFFENSE

The pre-sentence report prepared by Michael Penders, as well as the Information filed by

the government, describes the criminal activity of Mr. Long.  On its face, it would appear that

Mr. Long engaged in a much more elaborate predatory scheme than was really present.  Clearly,

Adam Long went online and engaged, through a chat room, in a conversation with an undercover

police agent, believing that agent to be a 14 year old girl.  Just as clearly, Adam Long used

explicit language of a sexual nature and, as the conversation continued, the two agreed to meet.

Adam has pled guilty, openly and freely and candidly admitting his guilt.  Further, as is

evidenced by Adam's statement to the Court, provided through the probation officer in the pre-

sentence report, Adam is extremely remorseful for having engaged in this activity.

We believe, however, that it is important for the Court to look at the larger picture of

what would have probably happened had Adam met the 14 year old girl, regardless of what may

have been his "intent" while chatting online with an experienced police officer who knew exactly

the right things to say.[1]

If there is one constant throughout the pre-sentence report, letters attached to this

memorandum and psychological reports to which we have been privy, it is that Adam Long is an

immature, lonely, socially awkward individual who is operating mentally and socially on the

level of a 14 to 15 year old himself.  He has no friends to speak of.  His family have scattered to

the wind, he works at menial jobs offering no realistic opportunity to intermingle with people

with whom he could become attached.  His jobs did not pay well enough for him to enjoy the

---

[1] We are in no way alleging entrapment nor are we trying to allege any defense.  We merely offer what we believe
would have happened, based upon conversations with all those who know Adam.

"social scene" in Washington, D.C.  He would, therefore, go to work and come home to a basement apartment he rented from Barbara Amaya.  His spare time was spent watching television and surfing the internet, both inexpensive ways for an uneducated, immature person to squander their time.  What happened in this case was pre-destined.  Eventually someone like Adam Long would happen across a chat room and engage in conversation with someone who was willing to "spend time" with him.

We offer this overall picture of Adam Long because we believe it supports our suspicion that he would not have preyed on an underage girl.  We suspect that when push came to shove he would have simply used the occasion to have someone to talk to.  If, indeed, a 14 year old girl had appeared and "came on" to him, he would more than likely have run away.  One of the main reasons we believe that he would not have preyed on this girl is based upon conversations with Barbara Amaya, his landlady, who has written a letter to the Court, attached as Exhibit 2.  As the Court can see from Ms. Amaya's letter, Adam resided in her house for over five years with herself and her daughter, who was 13 years of age at the time.  Not only does Ms. Amaya advise that she never saw Adam do anything which raised her suspicions of him, she also advises that if he had been released in his case, he would have been welcome to come back to her house to reside with her and her daughter.  Ms. Amaya makes this bold statement knowing of the charges in this case.

In considering the "nature and circumstances of the offense" under § 3553 (a)(1), we urge the Court to recognize the offense for what it truly was.  It was wrong.  It was illegal.  But it was the result of a lonely, immature man seeking someone, anyone with whom to socialize.

B.  HISTORY AND CHARACTERISTICS OF THE DEFEFNDANT

The history and characteristics of Adam have been laid out previously.  He is a 27 year

old with only one minor brush with the law, [2] who suffers from a variety of mental illnesses, is

socially immature but who is trying to better himself even while incarcerated.  Once released

from prison in this case he will be deported to the United Kingdom where his mother hopes to

place Adam in a support group to assist Adam in putting this nightmare behind him (See Exhibit

3).  Even given the nature and circumstances of the offense, his family and his landlady stand

beside him.  All those who know him, regardless of how repulsed they may be by the actions

which bring him before the Court, still support him.

There is no question that Mr. Long's conduct in this case is brought on by his history of

mental problems, lack of self esteem and immaturity.  Aside from the issue before the Court, Mr.

Long has been a law abiding citizen who has been devastated by these charges.


C.  THE NEED TO REFLECT THE SERIOUSNESS OF THE OFFENSE,
     PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST
     PUNISHMENT FOR THE OFFENSE

Again, we submit that Mr. Long's long history of employment, albeit at low paying jobs,

lack of criminal history, along with the fact that he admitted his guilt early on, mental issues,

prospect of deportation, having to register as a sex offender for at least 15 years and suffer the

---

[2] As the Court is aware (see PSI, page 6, paragraph 25) Mr. Long has had a prior disorderly conduct charge in
Arlington, Virginia.  In speaking with Mr. Long's counsel in Virginia, Mr. Long's father and Mr. Long himself, it is
abundantly clear that this charge was the result of Mr. Long actually being scammed himself by a Nigerian who
claimed to be part of a real estate company.  It was the typical scam where a bad check is given to someone in the
United States to deposit into their account with funds being immediately sent back to Nigeria on the promise of a
percentage going to the person who deposited the money in their own account.  By the time the check was
determined to be bogus, Mr. Long would have lost his money since he would have already sent funds to Nigeria.

consequences of being a convicted felon, are all sufficient punishment to reflect the seriousness of his involvement in this offense and to promote respect for the law.

Additionally, Adam has suffered greatly while incarcerated. He has severe asthma problems and needs to have medicine readily available when an asthma attack occurs. Yet the jail does not usually allow inmates to have medicine in their cells. Adam also suffers anxiety attacks, brought on by claustrophobia. The jail, to their credit, has accommodated this problem by leaving his cell unlocked. But, in a catch 22 type scenario, this means Adam is not safe from other inmates who would prey on someone like him. In short, incarceration is much more of a punishment to Adam than to almost any other inmate. We respectfully submit therefore that a lengthy period of incarceration is not necessary to satisfy any of the objectives of § 3553.

### D. THE NEED TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT

We submit the same factors listed above to promote respect of the law and to provide just punishment also afford adequate deterrence to criminal conduct. Clearly, Mr. Long has been deterred. The shame and humiliation he feels, even if there were no other consequences, would serve to deter him. A felony conviction, the consequences of having to register as a sex offender and overall public humiliation are enough, given the facts of this case, to deter criminal conduct by others, who, if they looked closely, would see that Adam is not the typical defendant in cases such as this.

### E. THE NEED TO PROTECT THE PUBLIC FROM FURTHER CRIMES BY MR. LONG

There can be no real dispute that there is no need for a lengthy period of incarceration in this case to protect the public from further crimes by Mr. Long. Adam's arrest and his involvement in the criminal justice system, along with the loss of job, felony conviction and

attendant consequences, is more than sufficient to ensure that Adam will never again made a bad decision with respect to any illegal conduct.  This has been a hard learned lesson for Adam Long.  The public needs no protection from him.  Since his arrest, he has cooperated with the government in every aspect, been truthful with government agents and the probation office, and continued with his education while incarcerated.

<u>CONCLUSION</u>

The advisory sentencing guideline range in this case, based on a criminal history I, with an offense level of 23, is a zone D advisory range of from 46 to 57 months.

The parties agreed that a six month downward departure is warranted pursuant to *United States v. Smith*, 27 F.3rd 649 (D.C. Cir. 1994).  The government has also agreed to request a sentence at the low end of the guideline range because Mr. Long attempted to cooperate in the prosecution of other individuals (see plea agreement at page 3, paragraph 7).  Accordingly, the government will seek a sentence of 40 months incarceration.

The parties also agreed, as a part of the plea agreement, that neither party would seek a departure from the advisory guideline range.  Accordingly, we will not ask the Court to go outside the advisory guideline range.  The Court must nonetheless decide, on its own, what is the most appropriate sentence for this offender and this offense given the dictates of 18 USC § 3553(a).  We leave it in the Court's hands to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes outlined above.  While we cannot argue for a sentence outside the guideline range, we can advise the Court of the regret, remorse, sorrow, humiliation and despair Mr. Long feels for his conduct in this case and we can remind the Court of his otherwise law abiding life and history of mental and social problems, as well as the hardship that prison brings to a person like him.   We do not envy the Court and what must be such a difficult

task in determining how much to punish someone like Adam Long, who has already suffered so much and who will suffer even more at the hands of other inmates who will find him such an easy target.

Respectfully submitted,

_____/s/_____
G. ALLEN DALE - Bar No. 954537
601 Pennsylvania Avenue, N.W.
Suite 900 - North Building
Washington, D.C.  20004
(202) 638-2900
Facsimile:  (202) 783-1654

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 07-00023-001 |
| v. | : | |
| | : | The Hon. Royce C. Lamberth |
| ADAM LONG, | | |
| | : | Sentencing:  May 22, 2007 |
| Defendant. | : | |

_____ :

### DEFENDANT'S MOTION WITH REGARD TO 18 U.S.C. § 3553(a) SENTENCING FACTORS AND MEMORANDUM IN AID OF SENTENCING

The defendant, Adam Long, through undersigned counsel, respectfully submits to the Court his position regarding the sentencing factors espoused in 18 U.S.C. § 3553(a). The Supreme Court's decision in *United States v. Booker,* 125 S. Ct. 738 (2005) and its progeny require district courts to consider all the factors contained in § 3553(a) when calculating a criminal defendant's ultimate sentence. This motion presents Mr. Long's position with regard to those factors contained in § 3553(a). In short, in light of Mr. Long's lack of criminal history, his history of employment, his mental and emotional health, his early plea of guilty, his remorse, and the fact that he will have to register as a sex offender for at least 15 years and will be deported after service of his sentence, we respectfully request the Court to sentence him to the lowest sentence sufficient to meet the goals of § 3553(a). See *United States v. Ferguson,* 456 F.3rd 660, 665 (6th Cir. 2006).

### INTRODUCTION

Adam Long stands before the Court for sentencing, having entered a plea of guilty to one count of Travel With Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. §

2423(b).  He brings with him an immeasurable amount of regret, remorse, sorrow, humiliation

and despair for his conduct in this case.  To those who know Mr. Long, it is unconceivable that

he would stand accused of a crime of this nature.  Indeed, when the Court considers his

upbringing, otherwise impressive background and actions in this case, it is quite clear that Mr.

Long is far from the typical criminal defendant.

We respectfully submit that Mr. Long's conduct in this case is inconsistent and inapposite

to the type of person that he truly is.  Nevertheless, Mr. Long's actions in this case were wrong

and unjustifiable.  In pleading guilty, Mr. Long has taken full responsibility for his actions and

offers his sincere apology to the Court, his family, friends, and the community.

<u>PERSONAL BACKGROUND OF MR.LONG</u>

I.  MR. LONG'S UPBRINGING

Adam Long was born on April 7, 1980, in England, the United Kingdom to his then 26

year old father and 38 year old mother.  Due to life threatening problems as an infant, Adam's

brain development was impaired from a very early age.  Consequently he was sent to a boarding

school, which offered special assistance to learning disabled children, where he remained from

age 9 to 16.

By age 11, Adam's parents had divorced and his father had moved to the United States.

When Adam finished school, at age 16, he began living on his own.  From age 16 to age 20

Adam lived by himself in the United Kingdom.  By this point in time, Adam's mother was

residing in Malaysia most of the year.  Adam had no friends, and no family, as his father had

moved to the United States in 1991.

In 2000, at age 20, Adam decided to move to the United States, where he could be close

to his father, who had remarried and had another child.  Adam's father, Nigel Long, did the best

he could to help his son find employment and begin a new life in the United States. Unfortunately, with this arrest that life and the lives of many others has been shattered. Adam's dad has attempted to assist his son through this legal process, while attempting to maintain a very busy travel schedule related to his work and juggling the feelings of his present wife and their 11 year old son. Adam's mom and half-sister, live so far away that they have not even been able to visit with Adam and are left wondering what his fate will be in a criminal justice system which they know little, if anything, about.

## II.  MR. LONG'S EDUCATIONAL BACKGROUND AND WORK HISTORY

As we indicated earlier, Adam attended a boarding school from age 9 to age 16. This boarding school, Bredon, is a boarding school that, while attending to average and above average students, specializes in children with learning disabilities. At age 16 Adam "graduated" from Bredon with a vocational certificate.

After obtaining his certificate from Bredon, Adam supported himself for four years in the United Kingdom working at various part-time positions in restaurants, while, at the same time attempting to learn a catering trade. After moving to the United States, with the help of his father, Adam was able to obtain employment at various facilities. While none of his employment lasted for a lengthy period of time, he was almost always employed and lived such a modest lifestyle that his low paying jobs provided sufficient support. As the Court can see from the pre-sentence report, the fact that Adam was not able to hold any job for a lengthy period of time was not because of his lack of desire but because of his learning disorders, which we will address shortly.

Since his incarceration, Adam has attempted to better himself educationally. He is in the process of obtaining a GED, and we have obtained for the Court's review, an academic/vocational progress report, which we have attached as Exhibit 1.

## III. MR LONG'S MENTAL AND EMOTIONAL HEALTH

Adam has been diagnosed with multiple mental disorders including attention deficient hyperactivity disorder and clinical depression. The first psychological evaluation was conducted when Adam was 13 years of age, after a referral by the Headmaster from the Bredon School. This report suggested that Adam's learning difficulties were associated with a weak short term auditory memory and poor visual motor coordination. Of note, the psychiatrist who conducted the testing discerned that (1) there was a discrepancy from Adam's chronological age to his learning abilities of approximately five years, (2) Adam had a low self image of himself in terms of both mental and social functioning, and (3) he was aware of the problems posed by his learning disorder; and according to Dr. D. J. Brown, the author of the report, Adam clearly wanted (and in Dr. Brown's opinion, deserved) help.

A neuropsychological evaluation was conducted in 2002, in which it was observed that, aside from the problems Adam had as an infant, he had suffered several sports related head injuries, two of which resulted in loss of consciousness. Dr. Edythe Wiggs, the neuropsychologist who authored the 2002 report, opined Adam's full scale IQ to be 79, in the borderline to low average range of intellectual ability. She observed that he needed direction repeated even within a sub-test as he was apt to begin to do something different from the instructions. As with the earlier testing, she also endorsed multiple symptoms of attention deficient hyperactivity disorder, inattentive type. (Both reports have been provided to the probation office and were mentioned in the presentence report.)

If the mental disorders were not enough, Adam has also had to deal with the emotional problems brought on by a lack of a stable family structure as well as his inability to socialize with his peers. Adam has always been overweight, never in shape and has suffered from very low self esteem. He has hardly ever dated, not being the type found attractive by members of the opposite sex. He had very few friends of the same sex, never being able to excel in sports or even carry on social, age appropriate banter with "the guys." Since his mother had moved to Malaysia and his father to the United States, Adam was left with no family and no friends, having to fend for himself for the last four years that he lived in the United Kingdom.

Fortunately, according to Adam's mother, she will return to the United Kingdom to assist Adam, who will be deported after his period of incarceration. She and her new husband will do their utmost to support him in creating a productive new life. She believes it will be a more protective society for him in Great Britain, because it is possible for young adults with difficulties similar to Adam to obtain assistance with housing and finding employment suitable to their capabilities. There also would be a number of support groups for which Adam would be eligible for membership. Adam's father, while he intends to remain in the United States, would take whatever steps are necessary by traveling to the UK, to ensure that Adam is re-integrated into society in Great Britain as well.

## ARGUMENT

In determining Mr. Long's sentence, this court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the need for the sentence imposed to (1) "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (2) "afford adequate deterrence to criminal conduct" and (3) "to protect the public from further crimes of the defendant." *See* 18

U.S.C. § 3553(a)(1), (a)(2)(A)-(a)(2)(C).  In support of his argument with regard to the relevant

considerations, Mr. Long offers the following.

### A.  NATURE AND CIRCUMSTANCES OF THE OFFENSE

The pre-sentence report prepared by Michael Penders, as well as the Information filed by

the government, describes the criminal activity of Mr. Long.  On its face, it would appear that

Mr. Long engaged in a much more elaborate predatory scheme than was really present.  Clearly,

Adam Long went online and engaged, through a chat room, in a conversation with an undercover

police agent, believing that agent to be a 14 year old girl.  Just as clearly, Adam Long used

explicit language of a sexual nature and, as the conversation continued, the two agreed to meet.

Adam has pled guilty, openly and freely and candidly admitting his guilt.  Further, as is

evidenced by Adam's statement to the Court, provided through the probation officer in the pre-

sentence report, Adam is extremely remorseful for having engaged in this activity.

We believe, however, that it is important for the Court to look at the larger picture of

what would have probably happened had Adam met the 14 year old girl, regardless of what may

have been his "intent" while chatting online with an experienced police officer who knew exactly

the right things to say.[1]

If there is one constant throughout the pre-sentence report, letters attached to this

memorandum and psychological reports to which we have been privy, it is that Adam Long is an

immature, lonely, socially awkward individual who is operating mentally and socially on the

level of a 14 to 15 year old himself.  He has no friends to speak of.  His family have scattered to

the wind, he works at menial jobs offering no realistic opportunity to intermingle with people

with whom he could become attached.  His jobs did not pay well enough for him to enjoy the

---

[1] We are in no way alleging entrapment nor are we trying to allege any defense.  We merely offer what we believe
would have happened, based upon conversations with all those who know Adam.

"social scene" in Washington, D.C.  He would, therefore, go to work and come home to a basement apartment he rented from Barbara Amaya.  His spare time was spent watching television and surfing the internet, both inexpensive ways for an uneducated, immature person to squander their time.  What happened in this case was pre-destined.  Eventually someone like Adam Long would happen across a chat room and engage in conversation with someone who was willing to "spend time" with him.

We offer this overall picture of Adam Long because we believe it supports our suspicion that he would not have preyed on an underage girl.  We suspect that when push came to shove he would have simply used the occasion to have someone to talk to.  If, indeed, a 14 year old girl had appeared and "came on" to him, he would more than likely have run away.  One of the main reasons we believe that he would not have preyed on this girl is based upon conversations with Barbara Amaya, his landlady, who has written a letter to the Court, attached as Exhibit 2.  As the Court can see from Ms. Amaya's letter, Adam resided in her house for over five years with herself and her daughter, who was 13 years of age at the time.  Not only does Ms. Amaya advise that she never saw Adam do anything which raised her suspicions of him, she also advises that if he had been released in his case, he would have been welcome to come back to her house to reside with her and her daughter.  Ms. Amaya makes this bold statement knowing of the charges in this case.

In considering the "nature and circumstances of the offense" under § 3553 (a)(1), we urge the Court to recognize the offense for what it truly was.  It was wrong.  It was illegal.  But it was the result of a lonely, immature man seeking someone, anyone with whom to socialize.

B.  HISTORY AND CHARACTERISTICS OF THE DEFEFNDANT

The history and characteristics of Adam have been laid out previously.  He is a 27 year old with only one minor brush with the law, [2] who suffers from a variety of mental illnesses, is socially immature but who is trying to better himself even while incarcerated.  Once released from prison in this case he will be deported to the United Kingdom where his mother hopes to place Adam in a support group to assist Adam in putting this nightmare behind him (See Exhibit 3).  Even given the nature and circumstances of the offense, his family and his landlady stand beside him.  All those who know him, regardless of how repulsed they may be by the actions which bring him before the Court, still support him.

There is no question that Mr. Long's conduct in this case is brought on by his history of mental problems, lack of self esteem and immaturity.  Aside from the issue before the Court, Mr. Long has been a law abiding citizen who has been devastated by these charges.

C.  THE NEED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE

Again, we submit that Mr. Long's long history of employment, albeit at low paying jobs, lack of criminal history, along with the fact that he admitted his guilt early on, mental issues, prospect of deportation, having to register as a sex offender for at least 15 years and suffer the

---

[2] As the Court is aware (see PSI, page 6, paragraph 25) Mr. Long has had a prior disorderly conduct charge in Arlington, Virginia.  In speaking with Mr. Long's counsel in Virginia, Mr. Long's father and Mr. Long himself, it is abundantly clear that this charge was the result of Mr. Long actually being scammed himself by a Nigerian who claimed to be part of a real estate company.  It was the typical scam where a bad check is given to someone in the United States to deposit into their account with funds being immediately sent back to Nigeria on the promise of a percentage going to the person who deposited the money in their own account.  By the time the check was determined to be bogus, Mr. Long would have lost his money since he would have already sent funds to Nigeria.

consequences of being a convicted felon, are all sufficient punishment to reflect the seriousness of his involvement in this offense and to promote respect for the law.

Additionally, Adam has suffered greatly while incarcerated. He has severe asthma problems and needs to have medicine readily available when an asthma attack occurs. Yet the jail does not usually allow inmates to have medicine in their cells. Adam also suffers anxiety attacks, brought on by claustrophobia. The jail, to their credit, has accommodated this problem by leaving his cell unlocked. But, in a catch 22 type scenario, this means Adam is not safe from other inmates who would prey on someone like him. In short, incarceration is much more of a punishment to Adam than to almost any other inmate. We respectfully submit therefore that a lengthy period of incarceration is not necessary to satisfy any of the objectives of § 3553.

### D. THE NEED TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT

We submit the same factors listed above to promote respect of the law and to provide just punishment also afford adequate deterrence to criminal conduct. Clearly, Mr. Long has been deterred. The shame and humiliation he feels, even if there were no other consequences, would serve to deter him. A felony conviction, the consequences of having to register as a sex offender and overall public humiliation are enough, given the facts of this case, to deter criminal conduct by others, who, if they looked closely, would see that Adam is not the typical defendant in cases such as this.

### E. THE NEED TO PROTECT THE PUBLIC FROM FURTHER CRIMES BY MR. LONG

There can be no real dispute that there is no need for a lengthy period of incarceration in this case to protect the public from further crimes by Mr. Long. Adam's arrest and his involvement in the criminal justice system, along with the loss of job, felony conviction and

attendant consequences, is more than sufficient to ensure that Adam will never again made a bad decision with respect to any illegal conduct. This has been a hard learned lesson for Adam Long. The public needs no protection from him. Since his arrest, he has cooperated with the government in every aspect, been truthful with government agents and the probation office, and continued with his education while incarcerated.

<u>CONCLUSION</u>

The advisory sentencing guideline range in this case, based on a criminal history I, with an offense level of 23, is a zone D advisory range of from 46 to 57 months.

The parties agreed that a six month downward departure is warranted pursuant to *United States v. Smith*, 27 F.3rd 649 (D.C. Cir. 1994). The government has also agreed to request a sentence at the low end of the guideline range because Mr. Long attempted to cooperate in the prosecution of other individuals (see plea agreement at page 3, paragraph 7). Accordingly, the government will seek a sentence of 40 months incarceration.

The parties also agreed, as a part of the plea agreement, that neither party would seek a departure from the advisory guideline range. Accordingly, we will not ask the Court to go outside the advisory guideline range. The Court must nonetheless decide, on its own, what is the most appropriate sentence for this offender and this offense given the dictates of 18 USC § 3553(a). We leave it in the Court's hands to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes outlined above. While we cannot argue for a sentence outside the guideline range, we can advise the Court of the regret, remorse, sorrow, humiliation and despair Mr. Long feels for his conduct in this case and we can remind the Court of his otherwise law abiding life and history of mental and social problems, as well as the hardship that prison brings to a person like him. We do not envy the Court and what must be such a difficult

task in determining how much to punish someone like Adam Long, who has already suffered so much and who will suffer even more at the hands of other inmates who will find him such an easy target.

Respectfully submitted,


_____/s/_____
G. ALLEN DALE - Bar No. 954537
601 Pennsylvania Avenue, N.W.
Suite 900 - North Building
Washington, D.C.  20004
(202) 638-2900
Facsimile:  (202) 783-1654

# EXHIBIT 1

CORRECTIONS CORPORATION OF AMERICA
CORRECTIONAL TREATMENT FACILITY
EDUCATION DEPARTMENT

# ACADEMIC/VOCATIONAL PROGRESS REPORT

NAME: Adrian Louis

DCDC No. 312-959    Unit D3B    Mgr _____    Entry Date 3/20/07    Exit Date _____

TABE Scores

Entry Scores

| Start of Report Period | End of Report Period |
|---|---|

## PROGRAMS

| | |
|---|---|
| ABE _____ | COMMERCIAL CLEANING A.M. _____ |
| ✓ GED _____ | COMPUTER LITERACY P.M. _____ |
| LIFE SKILLS _____ | GRAPHIC ARTS _____ |
| BARBER/COSMETOLOGY _____ | ESL _____ |

| ATTENDANCE | | PROGRESS | | | BEHAVIOR ATTITUDE | | | | COMPLETIONS | | RECOMMENDATIONS | | | INITIALS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | OUTSTANDING | SATISFACTORY | UNSATISFACTORY | EXCELLENT | GOOD | FAIR | POOR | COURSE | DATE | FAVORABLE | FAVORABLE W/RES. | UNFAVORABLE | STUDENT'S | TEACHER'S |
| PRESENT | 9 | | | | | | | | | | | | | | |
| TARDY | 0 | | ✓ | | | ✓ | | | | | ✓ | | | | ✓ |
| EXCUSED | 6 | | | | | | | | | | | | | | |
| UNEXCUSED | 0 | | | | | | | | | | | | | | |
| TOTAL DAYS | 15 | | | | | | | | | | | | | | |

PERIOD: 3/20/07 To 4/30/07    To _____

COMMENTS: Mr. Louis has progressed since starting this class. I am sure he will continue to improve if this present progress continues. His behavior and respect for the rules of the school are good.

PRINCIPAL'S SIGNATURE _____ 5/9/07

TEACHER'S SIGNATURE _____

STUDENT'S SIGNATURE _____

# EXHIBIT 2

Reminder: AOL will never ask you to send us your password or credit card number in an email.    This message has been scanned for known viruses.

| | |
|---|---|
| **From:** | BarBltt@aol.com |
| **To:** | GAllenDale@aol.com |
| **Cc:** | NigelGLong@comcast.com |
| **Subject:** | (no subject) |
| **Date:** | Sat, 12 May 2007 11:35 AM |

May 12 2007

Judge Royce C. Lambert
United States District Court for the District of Columbia

Dear Judge Lambert,
  I am writiting to you on behalf of Adam Long. Adam resided in my residence for a little over 5 years, with myself and my daughter. While we were not roommates, Adam resided in the basement, we shared the laundry room area, the residence being a 3 level townhouse. When Adam moved in my daughter would have been 13 years old, and the entire time he lived here I had no problems in regards to Adam sharing the laundry facilities with myself or my daugher. Over the past 5 years I have a chance to observe Adam, fairly closely, since I am at home pretty much all day due to health matters, and what I have observed is a lonely young man, I observed male friends his age, some of whom I know, because they work across the street at the Giant supermarket, coming to visit Adam, but never over the past 5 years have I seen any young women coming or going from this residence, and my living room window overlooks the only entrance to the room Adam was in. I have been informed of the charges against Adam Long, and I would have welcomed him back into my home if he would have been released on probation. If you have any questions, or would need to contact me, please do so I can be reached at home phone 703-299-1715 or online at Barbltt@aol.com In closing  I would just like to say that I feel Adam should be released, thankyou.


Sincerely,

Barbara B. Amaya



See what's free at AOL.com.

# EXHIBIT 3

**MRS B BAJOMEE**
**STAG COTTAGE**
**MAIN ROAD**
**BUCKS HIORN OAK**
**FARNHAM**
**SURREY GU9 4LT**

28 April 2007

Judge Royce C Lamberth
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
333 Constitution Avenue NW
Washington DC 2000
USA

Dear Sir

RE: ADAM DOMINIC LONG

I am Adam's mother and at the present time I am spending an extended vacation in Malaysia as I retired three years ago from my senior position with Surrey Police in UK. I will be Returning to the above address on 2 May 2007. I am writing to give some background information reference the time Adam spent with me in UK.

Adam had a far from easy childhood as even from the time he entered nursery school at the age of 4 he found it difficult to mix with other children He seemed to lack confidence in himself and became increasingly isolated and frustrated.

We had a large circle of friends, many with children around Adam's age but he kept himself very much to himself and appeared to be much happier in the company of adults. We tried to involve him in various interests, such as ice skating, mini Rugby, fishing, camping etc but although he enjoyed the activities themselves he remained a loner.

It became more difficult for Adam when he went to primary school as it was then becoming clear that Adam had learning difficulties and he obviously knew he was a little different to most of the other children.

On the advice of his teachers, Adam was sent to a boarding school which in addition to having pupils of average and above average intelligence also specialised in providing schooling for the less able child. Adam settled into the school but again was very isolated and generally found life very difficult.

We were fortunate in that we were able to travel to Europe for vacations, fairly frequently. We were able to take ski-ing vacations during winter and her in contrast Adam mixed in ski school very well as he learned to ski at an advanced level and was able to compete on equal terms with the other children. In fact he became a different person as being aware that he was good at this activity gave him confidence.

After secondary school Adam decided to study catering. At the same time he found a part time job with Pizza Express. He held this job for over two years and in fact did very well there, he was well liked by his manager and other team members. He was trusted to run the restaurant in the manager's absence and very much enjoyed this responsibility. Unfortunately the chain of restaurants was sold and our local branch was closed down resulting in Adam losing his job.;

Adam did succeed in finding another job but he was not as happy and this affected his studying to be a caterer. He decided that he might make a fresh start by going to USA to spend time with his father. Adam felt that this would be a good opportunity for him and he hoped that having his father there as a role model would help him develop as an adult.

Whilst in UK Adam did not commit any criminal offences. He was not interested in hanging out with troublemakers, never stayed out late and did not get involved in drugs of any kind. It was clear that he was lonely and unhappy as he missed out on the activities usually enjoyed by teenage boys I.e. going to football matches, parties, out for meals etc. He spent most of his leisure time watching television or listening to music.

Should Adam return to UK at any time then my husband and I would do our utmost to support him in creating a productive new life for himself. It would be a more protected society for him in the UK as it is possible for young adults with difficulties similar to those of Adam to get assistance with housing and finding employment suiting their capabilities. There are also a number of support groups for which Adam would be eligible for membership. He would also be part of a large family unit, having two stepsisters who both have children. Being part of a family group again would I feel be beneficial for Adam.

I trust the foregoing is of assistance. Please do not hesitate to contact me if you should require any further information.

Yours faithfully


B Bajomee (Mrs)

# EXHIBIT 4

Phone: 703-445-9446                         2882 Chevoit Hill Court
                                            Woodbridge VA 22191
                                            May 6, 2007


Judge Royce C. Lamberth
U.S. District Court for the District of Columbia
333 Constitution Ave., N.W.
Washington DC 20001


Dear Judge Lamberth,

Re:  Adam Long


I write to the Court in respect of the upcoming sentencing of my son,
Adam Long.

After suffering from Pyloric Stenosis in the first few months of his
life, Adam experienced learning difficulties that became apparent
early on in his schooling.  With the support of the Local Education
Authority, he was placed in a Boarding School to provide additional
support and he did attend one year of vocational college studies.

To the best of my knowledge, Adam did not get into any legal trouble
while living in the UK.  However, I am not aware of him making any
close friends – certainly none have stayed in contact with him.

His mother has now retired and lives in Farnham, Surrey – although she
is spending some time traveling.  Adam's half-sister lives in New
Zealand.

In 1991 I moved to the US to follow my career at the same time as I
was being divorced by Adam's mother.  Having visited me on a number of
occasions, Adam moved to the US in May 2000.  In 2001 he started
living in Arlington and over the following years held a number of
service jobs in the area.

I was able to supply Adam with the financial support to cope with some
of the challenges he experienced from time-to-time.  However, I was
not able protect him from all the difficulties he faced.  And, as far
as I am aware, he did not have any close friends in Arlington who
would have been able to provide that support.

I would mention that Adam's "landlady" (Barbara Amaya) has a daughter
who was a young teenager when Adam moved in during 2001.  While Adam
lived separately in the Basement, the 3 shared laundry facilities and
Adam could have had access to the whole house.  After Adam's arrest
the local police made Barbara very aware of the nature of his offence.
However, as I assume Court records show, she was prepared to let Adam
return to her house if he had been released on bail back in December.

I deeply regret that I did not appreciate how lonely Adam became in late 2006 after loosing the job he had held since the start of that year. In retrospect it is clear that Adam was searching for a job – and for social contact – in any way he could.  My personal belief is that this offence was related to the opportunity for an almost penniless young person to have social contact, rather than a deliberate attempt by Adam to develop a relationship with an underage girl.

While the Court will decide the appropriate punishment for this offence, I hope the above provides some idea of how little risk Adam presents to society and how important it is to provide an environment in which Adam can gain the additional educational and social skills to be able to return to a useful life.  While in CTF, Adam has already started a GED course and tells me that he will take advantage of whatever opportunities are available to him to improve himself.  I too will do whatever I can to make sure he learns from his mistake and becomes a productive member of society.

Please let me know if I can provide any additional information.

Sincerely,

Nigel G. Long